THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORIOS MAOUNIS, Defendant-Appellant.

First District (4th Division)   No. 1—97—3819

Opinion filed December 9, 1999, *nunc pro tunc* October 21, 1999.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, Nancy Faulls, and Kelly L. Martin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOURIHANE delivered the opinion of the court:

Following a jury trial, defendant Gregorios Maounis was found guilty of armed robbery and sentenced to a 6½-year prison term. On appeal, defendant contends (1) that certain errors at trial served to deny him his constitutional right to due process of law and (2) that the evidence introduced against him was insufficient to sustain his conviction.

For the following reasons, we reverse and remand.

## BACKGROUND

Defendant was arrested on January 11, 1997, and charged with armed robbery.

At trial, Derrick Neal testified that he was working behind the counter at a truck rental firm in Niles on the evening of December 7, 1996. At around 6:30 p.m., defendant approached him wearing "blue jeans, a *** black jacket and a skull cap." Aside from other more general characteristics, Neal also noticed that defendant had a large mustache. Defendant inquired about truck rentals. Neal stated that

he turned toward a display in order to better explain the different options available. When he turned back, defendant was pointing a gun at his chest. Defendant then told Neal to give him all the money from a nearby cash register. Neal did so. Defendant took the money and fled.

Neal testified he then called the police and gave them a description of defendant. With the help of Niles police detective Thomas Davis, that description was used to create a composite picture, which was then displayed in the Niles police department.

Niles police detective Martin Stankowicz noticed the composite picture. Detective Stankowicz was investigating a missing person report concerning defendant. His comparison of the composite picture and a photograph of defendant he had obtained as a part of his investigation led him to include the photograph in an array shown to Neal on January 3, 1997. Neal identified defendant "right away" in a lineup several days later. Neal also identified defendant in court.

Niles police detective Joseph O'Sullivan, who was also present when the photographs were shown to Neal, confirmed the latter's testimony. According to Detective O'Sullivan, Neal identified the photograph of defendant, stating, " '[T]hat's him. That looks just like him.' "

Detective O'Sullivan further testified that he met defendant outside his place of employment on the evening of January 11, 1997. Detective O'Sullivan drove defendant to the Niles police department, where he and Detective Stankowicz conducted an interview. Detective O'Sullivan stated he asked defendant to pinpoint his whereabouts for the prior month, December 7, 1996, in particular. Defendant, however, could not do so. Detective O'Sullivan then testified as follows:

> "[Defendant] stated he stayed in various transient motels. He mentioned the Ambers and the Milshire motels. He said he stayed in some motels along Lincoln Avenue. He said that he had met a prostitute named Maria on North Avenue *** and that he had spent much of the time he was reported missing with her and[,] in his words[,] [']partying.['] And when I asked him what he meant by [']partying,['] he said buying alcohol beverages and smoking crack cocaine."

The circuit court interrupted Detective O'Sullivan to admonish the jury that the foregoing testimony was "only being allowed for the limited purpose of showing motive."

The State rested shortly thereafter.

Defendant called Louise McNamara to testify on his behalf. McNamara stated that she prepared paychecks for the employees at

Temple Steel Company, where defendant worked. McNamara testified that five paychecks totalling $3,015.32 were generated for defendant on November 27, 1996.

Maryel Gonzalez testified that she was celebrating her birthday on December 7, 1996, with several family members, including defendant. According to Gonzalez, defendant arrived at her home at approximately 6:30 in the evening and left 2½ hours later.

Rose Marie Alicea also attended Gonzalez' birthday party. She testified that she arrived at around eight that evening, around the time defendant was leaving.

Martha Arce helped Gonzalez prepare for her birthday party. Like Gonzalez, she testified that defendant attended the party, arriving between five and six that evening.

Defendant also testified in his own behalf. He stated that he received five paychecks on November 27, 1996, before beginning a four-week vacation. Defendant cashed two of the paychecks on December 2, 1996. The remaining three paychecks were cashed separately during the next nine days.

Defendant also stated he attended a birthday party for Gonzalez on December 7, 1996, arriving at her home between five and 6:30 that evening. Defendant left the party after eight.

Defendant further testified that he was arrested outside Temple Steel on January 11, 1997, and driven to the Niles police department. There, he was asked to explain where he had been since November 26, 1996. Defendant told the officers he "had a little problem with [his] wife" and that he was staying in a hotel with a friend. The officers then told him he had been identified in an armed robbery on December 7, 1996. Defendant denied any involvement, telling the officers that he was at a birthday party on that evening. He further explained that he had no reason to steal. He had several paychecks that he had periodically cashed during the past month.

Defendant also denied he ever told Detectives Stankowicz and O'Sullivan that he had been smoking crack cocaine and living with a prostitute during the time he was away from his family.

With that, defendant rested.

The State then called Detectives Stankowicz, O'Sullivan and Davis in rebuttal. Each denied defendant ever told them he was at a birthday party during the evening of December 7, 1996.

After hearing all the evidence and arguments of counsel, the jury found defendant guilty of armed robbery.

This appeal followed.

## DISCUSSION

### I

Defendant initially contends he was denied a fair trial.

### A

Specifically, defendant argues that admission of his statement to Detectives O'Sullivan and Stankowicz was in error. According to defendant, that statement was both irrelevant and highly prejudicial.

■ The admission of evidence at trial rests within the sound discretion of a circuit court. *People v. Kidd*, 147 Ill. 2d 510, 535, 591 N.E.2d 431 (1992); *People v. Hayes*, 139 Ill. 2d 89, 130, 564 N.E.2d 803 (1990). Only when that discretion is shown to have been abused will an evidentiary ruling be disturbed on appeal. *Kidd*, 147 Ill. 2d at 535; *Hayes*, 139 Ill. 2d at 130.

■ Generally speaking, evidence of prior bad acts is inadmissible unless offered to prove *modus operandi*, intent, identity, motive or absence of mistake. *People v. Robinson*, 167 Ill. 2d 53, 62-63 (1995). In *People v. Walker*, 86 Mich. App. 155, 272 N.W.2d 222 (1978), it was held that evidence of drug addiction is relevant to motive in a prosecution for theft if each of the following is also established:

"(1) that defendant not merely used a drug, but that he used a drug which is addictive and that he actually was, in some substantial manner, addicted, and thus, compelled to obtain the drug; (2) that he used the drug in such quantity that maintenance of his habit was expensive; (3) that he lacked sufficient income from legal sources to sustain his habit." 86 Mich. App. at 159 n.2, 272 N.W.2d at 224 n.2, citing *United States v. Mullings*, 364 F.2d 173, 175-76 (2d Cir. 1966).

The reasoning in *Walker* is sound. It also has obvious application to the underlying appeal.

■ Here, the State was allowed to introduce the statement defendant gave to Detectives O'Sullivan and Stankowicz as circumstantial evidence of motive for the armed robbery. The statement included a confession by defendant that around the time of the armed robbery he had purchased and consumed alcohol and crack cocaine, patronized a prostitute and stayed in various transient motels.

The State had the burden of establishing both that defendant lacked funds and that he was addicted in order for his statement to have been admissible as evidence of motive. See *Walker*, 86 Mich. App. at 159 n.2, 272 N.W.2d at 224 n.2; *Mullings*, 364 F.2d at 175-76. The State, however, proved neither. The evidence at trial established that defendant had sufficient resources, both before and after the evening of the armed robbery. Indeed, it is undisputed that defendant still had

at least $1,047.06 in uncashed paychecks on December 7, 1996. Likewise, the State never established that defendant suffered from any addiction. The circuit court, therefore, abused its discretion in admitting evidence of that portion of the statement defendant gave to Detectives O'Sullivan and Stankowicz concerning his purchase and consumption of alcohol and crack cocaine as well as his patronization of a prostitute.

Moreover, the admission of that other crimes evidence was not harmless. That evidence was clearly prejudicial.

### B

Defendant also argues that the circuit court erred in allowing the State to elicit testimony from him that he was not with his wife and family at Christmas.

Prior to trial, defendant moved the circuit court to bar the State from introducing evidence that he left his family on November 26, 1996, and did not return until January 1997. The circuit court denied that motion. At trial, the State elicited testimony from defendant in which he admitted that he was not with his wife and daughter at Christmas.

■ That testimony was entirely unnecessary and improper. *People v. Donaldson*, 8 Ill. 2d 510, 516-18, 134 N.E.2d 776 (1956). Whether defendant was residing with his family at Christmas was irrelevant to the issues presented to the jury at trial. See *People v. Boclair*, 129 Ill. 2d 458, 477, 544 N.E.2d 715 (1989). Accordingly, the circuit court erred in admitting such evidence.

### C

During closing arguments, the State argued the following in rebuttal:

"Anyway[,] what a coinciden[ce] the night—the time that [Neal] picks a guy who basically has disappeared[,] *** he is on vacation, not going to work. *He is not going home. He is not talking to his wife despite [the fact] he says, [']I love her and my child. I still want to get back together.['] It is not recommended family therapy [to] disappear[ ] and not have any contact whatsoever. That of course as we know continues through the rest of December. There is no contact with his nuclear family. Misses Christmas.*

\* \* \*

*And he doesn't see his daughter when she is on[,] I assume[,] whatever school winter break, doesn't see her [at] Christmas.*

\* \* \*

Now, defendant's statement shows this was a man out of control going through money like water. *Says he loves his wife and daugh-*

*ter. No contact. You may be mad at your wife, but don't you let her know you are safe and certainly not his daughter. Not mad at his daughter.*

Well, the defendant needs to be told that[,] *I submit*[,] *when you find him guilty of armed robbery* \*\*\*. When you are going through money like he says he was, he needs money. Rich people steal. People [who] need money right that second steal." (Emphasis added.)

Defendant now contends he was denied a fair trial when the circuit court allowed the State to argue that the jury should find defendant guilty of armed robbery because the evidence of his prior bad acts toward his wife and daughter established his bad character and, in turn, his propensity to commit crime.

■ Defendant did not object to the aforementioned rebuttal argument of the State. Neither did he raise this contention within his posttrial motion. Defendant has accordingly waived as much for purposes of appeal. *People v. Enoch*, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988). Defendant maintains, however, that this contention is reviewable pursuant to the plain error doctrine. 134 Ill. 2d R. 615(a). In criminal appeals, review pursuant to the plain error doctrine is only appropriate where the evidence is closely balanced or where the unpreserved error is of such magnitude that a substantial risk exists that a defendant was denied a fair trial. *People v. Vargas*, 174 Ill. 2d 355, 363, 673 N.E.2d 1037 (1996).

This contention warrants such review. See *People v. Barnett*, 48 Ill. App. 3d 121, 126, 362 N.E.2d 420 (1977).

■ It is improper for the State to urge jurors to consider the prior bad acts of a defendant as evidence of his guilt. *People v. Oden*, 20 Ill. 2d 470, 484-85, 170 N.E.2d 582 (1960); *Donaldson*, 8 Ill. 2d at 517-18; *Barnett*, 48 Ill. App. 3d at 126; *People v. Carel*, 37 Ill. App. 3d 952, 954, 346 N.E.2d 186 (1976). Moreover, "if the argument of counsel is seriously prejudicial, a court should, of its own motion, stop the argument and direct the jury not to consider it." *People v. Moore*, 9 Ill. 2d 224, 232, 137 N.E.2d 246 (1956).

As previously discussed, the circuit court erred in allowing the State to introduce evidence that defendant did not spend Christmas with his wife and daughter and that he did not contact them, at all, during his absence. That evidence was entirely irrelevant and gratuitous. However, rather than omit any mention of that evidence during closing argument, the State proceeded to dwell on it. More importantly, the State urged the jurors to find defendant guilty of armed robbery, in part, to punish him for those same prior bad acts. That argument was clearly improper and prejudicial. The circuit court, accordingly,

abused its discretion in failing to direct the jury not to consider that argument during deliberation.

In short, the foregoing error of the circuit court served to deny defendant his constitutional right to a fair trial. Defendant, therefore, is entitled to a new trial.

## II

Defendant lastly contends the evidence introduced against him was insufficient to sustain his conviction for armed robbery. Specifically, defendant contends that the identification testimony from Neal was "weak and hardly sufficient for proof beyond a reasonable doubt."

■ In addressing a challenge to the sufficiency of the evidence, a reviewing court is not to retry a defendant but, rather, to determine, after viewing all the evidence in a light most favorable to the State, whether any rational trier of fact could have found that defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). Only when the evidence used to convict is so improbable, unsatisfactory or inconclusive will a conviction be set aside. *Collins*, 106 Ill. 2d at 261; *People v. Bybee*, 9 Ill. 2d 214, 221, 137 N.E.2d 251 (1956). Moreover, the testimony of one witness, if positive and credible, is sufficient to support a conviction (*People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317 (1989); *People v. Miller*, 30 Ill. 2d 110, 113, 195 N.E.2d 694 (1964); *People v. Campbell*, 252 Ill. App. 3d 624, 628, 625 N.E.2d 130 (1993)), even in the face of contradictory alibi testimony. *People v. Tate*, 87 Ill. 2d 134, 148, 429 N.E.2d 470 (1981); *People v. Manion*, 67 Ill. 2d 564, 578, 367 N.E.2d 1313 (1977).

■ Here, Neal testified that defendant approached him on the evening of December 7, 1996, inquiring about truck rentals. Neal described defendant, his clothing as well as his distinctive mustache. Neal and defendant were also in very close proximity to one another at the time of the armed robbery. The evidence further established that Neal positively identified a photograph of defendant on January 3, 1997. Indeed, according to Detective O'Sullivan, Neal identified the photograph without any hesitation. Neal later positively identified defendant himself in a lineup at the Niles police department. Neal also positively identified defendant at trial. The foregoing evidence, when viewed in a light most favorable to the State, was more than sufficient to establish the identity of defendant. That there was no testimony from Neal or through the detectives regarding the manner in which defendant spoke does not mean the identity evidence was insufficient. Indeed, the jury was confronted with that discrepancy, yet ultimately found the absence of such testimony unpersuasive.

## CONCLUSION

For the aforementioned reasons, we reverse defendant's conviction

and sentence for armed robbery and remand this matter to the circuit court for a new trial.

Reversed and remanded with directions.

HOFFMAN, P.J., and SOUTH J., concur.