Rockingham
No. 2008-332

THE STATE OF NEW HAMPSHIRE

v.

KURT COSTELLO

Argued: May 5, 2009
Opinion Issued: July 23, 2009

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. Following a jury trial in Superior Court (*Lewis*, J.), the defendant, Kurt Costello, was convicted of burglary. *See* RSA 635:1 (2007). He appeals, arguing that the trial court erred by admitting evidence that he was addicted to heroin. We affirm.

The jury could have found the following facts. Around noon on July 5, 2006, fourteen-year-old David Smith was home alone sleeping when he heard a knock on the slider door. He woke up, opened the slider, and saw his neighbor, Stuart Markham, the defendant's stepson, walking away. Thinking Markham merely wanted to play catch, Smith went back to sleep.

Approximately thirty minutes later, Smith heard his dog barking, and as he looked out his bedroom door, he saw someone dressed completely in black, bending down at the slider door. A minute or two later, he heard banging at the door and heard someone calling his dog by name. Thinking it was someone he knew, Smith emerged from his bedroom and saw a man standing in his kitchen. He described the man as clean-shaven, short-haired, standing 5 10 or 5 11, between thirty-five and forty years old and with tattoos of black flames on his forearms and neck. The man told Smith that he had let himself into the house because he had seen someone *else* trying to break in and he had wanted to let the homeowner know. After about two minutes, the man left and walked into the woods behind the house. Smith noticed that the back door, which was next to the slider, had been ripped off of its hinges; nothing was missing from the home.

The police were called and began investigating immediately. One officer, while walking around the neighborhood, noticed the defendant's stepson watching him and talking on a cell phone.

Within a day or two of the incident, the police gave the media Smith's description of the intruder. After the news broadcast, the defendant called a friend and asked if he knew a good tattoo artist who could cover up tattoos. The police also received an e-mail from Nicole Irvine, a friend of the defendant's wife, Kathy Markham-Costello. Irvine testified that, in July 2006, Markham-Costello had called and asked if she could "hide out" at Irvine's house. The police followed every lead arising from the media broadcast and eliminated all suspects except the defendant.

When the police spoke to the defendant, he told them he had been at home on July 5, 2006, and had not gone to Smith's house. He did, however, tell the police he was in the area where the suspect disappeared into the woods behind Smith's house, but said he was looking for his stepson. He also said he knew the police were looking for a person with tattoos who had entered a nearby property.

The grand jury indicted the defendant for burglary. *See* RSA 635:1. His wife was charged with hindering apprehension, a charge to which she eventually pled guilty. That charge alleged that on July 5, Markham-

Costello concealed the defendant in the trunk of her car so as to prevent the police from discovering him. In a recorded interview, Markham-Costello told the police that on the afternoon of July 5, she and the defendant were home with her father when, at some point, the defendant left the house to check the mail. When she next saw the defendant, he "came running into the house, all excited, out of breath and sweaty." The defendant hid in the trunk of their car as she drove from the house so the police could not find him. Markham-Costello saw police in the area and knew "something bad happened."

At trial, the State moved *in limine* to introduce evidence that the defendant was a heroin addict. The State argued that this evidence was admissible to show that the defendant entered Smith's home with the intent to commit a crime therein, an element of burglary. *See* RSA 635:1. The State contended that this evidence, coupled with evidence that, at the time of the crime, the defendant was unemployed, would be relevant to show that he entered Smith's home with the intent to steal.

Over the defendant's objection, the court allowed the State to introduce the evidence through the testimony of his wife. Markham-Costello testified that, in July 2006, the defendant was addicted to heroin. She told the jury that he was "usually broke" because they had "two habits to support." She testified that in July 2006, the defendant had a heroin "problem." She also confirmed that she had told the police on August 3, 2006, that the defendant was out of the house and that she thought he was "using." Additionally, although she told the jury she was lying when she spoke to police, the jury heard a tape recording of her telling the police that in July 2006, the defendant had recently lost his job and that she supported him financially. Further, she testified that the defendant "is never clean-shaven. Junkies don't even like to shower, they are not going to get the razor out."

In light of this evidence, the trial court instructed the jury:

> You may consider this evidence for the narrow purpose of deciding whether the State has proven beyond a reasonable doubt the motive of the defendant in connection with the burglary crime charged.
>
> If you believe that the defendant committed the prior illegal act or acts in question, then you may use that evidence in deciding whether the State has met its burden of proof in establishing the motive element of the crime charged; that is, that the defendant entered the pertinent premises with a purpose to commit the crime of theft.
>
> You may not, however, use this evidence for any other purpose. Specifically, you may not consider this to be evidence of the

defendant's character or as proof that the defendant was disposed to commit the crime charged. The defendant's character is not at issue in this case. Keep in mind that it is your duty — that your duty is to decide whether the State has proven that the defendant committed the particular crime charged in the indictment.

The sole issue for our review is whether admitting evidence that the defendant was a heroin addict at the time of the alleged burglary violated New Hampshire Rule of Evidence 404(b). We review the trial court's decision for an unsustainable exercise of discretion. *State v. Pepin*, 156 N.H. 269, 276 (2007).

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The purpose of Rule 404(b) is to ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based upon evidence of other crimes or wrongs. *State v. Kim*, 153 N.H. 322, 326 (2006). The evidence must satisfy a three-part test to be admissible under Rule 404(b): (1) the evidence must be relevant for a purpose other than proving the defendant's character or disposition; (2) there must be clear proof that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* The State bears the burden of demonstrating the admissibility of the prior bad acts. *Id.* at 327. Here, the defendant challenges the trial court's decision with respect to the first and third prongs of the Rule 404(b) analysis.

To meet its burden under the first prong, the State must demonstrate the relevancy of the evidence. *Id.* at 326. This requires the State to "articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *Id.* at 327. That chain of reasoning must demonstrate "a sufficient logical connection" between the prior acts and the permissible purpose for which the State offers the evidence. *Id.*

Here, the defendant was charged with burglary, which required the State to prove unauthorized entry with intent to commit a crime therein. *See* RSA

635:1; *State v. Collins*, 133 N.H. 609, 617 (1990). The State contends that the defendant's heroin addiction was relevant to show that he entered Smith's home with the motive to steal.

■ "Motive has been defined as supplying the reason that nudges the will and prods the mind to indulge in criminal intent." *Kim*, 153 N.H. at 328. Whether a defendant's drug addiction is relevant to show motive to steal is an issue of first impression. Courts that have addressed this issue are divided. *See generally* Annotation, *Admissibility of Evidence of Accused's Drug Addiction or Use to Show Motive for Theft of Property Other Than Drugs*, 2 A.L.R. 4TH 1298 (1980 & Supp. 2008). Some courts bar the State from introducing evidence of habitual drug use to prove a motive to steal, *see, e.g.*, *State v. Mazowski*, 766 A.2d 1176, 1180 (N.J. Super. Ct. App. Div. 2001) (rejecting State's assertion that "[b]ecause defendant is a drug addict, . . . he is constantly in need of money, he cannot hold onto money, and thus he has a 'motive' to commit crimes"), while others allow it, *see, e.g.*, *State v. Henness*, 679 N.E.2d 686, 694 (Ohio) ("Appellant's drug addiction and use shows his need for money and, hence, his motive to steal and kill."), *cert. denied*, 522 U.S. 971 (1997).

We addressed a related issue in *State v. Monroe*, 142 N.H. 857 (1998), *cert. denied*, 525 U.S. 1073 (1999). In *Monroe*, the defendant sought to show that his son had a motive to kill the victim by presenting evidence of his son's past drug use. *Monroe*, 142 N.H. at 870. The trial court ruled that this evidence was inadmissible because it was irrelevant, and we agreed. *Id.* at 871. On appeal, the defendant argued that evidence of his son's drug use was relevant to show the son's motive to commit murder. *Id.* at 871-72. We concluded that absent a "sufficient nexus between [the son's] use of drugs and a motive to murder [the victim], . . . evidence of drug use would only serve as evidence of [the son's] character or disposition, which is forbidden by Rule 404(b)." *Id.* at 872. We did not, however, specify the kind of evidence that would establish a "sufficient nexus" between a defendant's drug use and a motive to commit the alleged crime. We therefore look to other jurisdictions that employ a similar test for guidance.

■ As a number of courts have recognized, before concluding that there is a logical connection between a defendant's addiction and his motive to commit a crime, there must first be reason to believe that the defendant was indeed the perpetrator. *See State v. LeFever*, 690 P.2d 574, 578 (Wash. 1984) (en banc), *overruled on other grounds by State v. Collins*, 771 P.2d 350 (Wash. 1989); *see also People v. Cardenas*, 647 P.2d 569, 575-76 (Cal. 1982) (reversing robbery conviction because lack of credible identification made it "reasonably probable that the jury made its determination of guilt based on appellant's status as a heroin addict . . . rather than on evidence connecting

him to the crimes"). In an analogous situation, the Ninth Circuit Court of Appeals addressed whether a defendant's continued poverty was relevant to prove motive to commit a bank robbery. *United States v. Mitchell*, 172 F.3d 1104, 1106 (9th Cir. 1999). In *Mitchell*, a bank was robbed at gunpoint. *Id.* at 1105. The only issue at trial was whether Mitchell was the person who robbed the bank or was mistakenly identified. *Id.* Because the prosecution's evidence of identity was weak, it sought to prove that Mitchell was poor to show that he had a motive to rob the bank. *Id.* at 1106. Although the prosecution was able to prove his poverty leading up to the robbery, evidence also showed that he remained poor after the robbery. *Id.* On appeal, because poverty is not a "bad act," the court did not conduct a Rule 404(b) analysis, but rather concluded that the evidence of poverty, without more, was simply not relevant. *Id.* Quoting Professor Wigmore, the court reasoned:

> "The lack of money by A might be relevant enough to show the probability of A's desiring to commit a crime in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes, particularly those of violence."

*Id.* at 1108 (quoting II WIGMORE, EVIDENCE § 392 (Chadbourne rev. 1979)). Because the evidence of poverty tended to suggest that Mitchell was the unknown bank robber, the court concluded that the evidence was of "negligible probative value," *id.* at 1110, noting that it had little tendency to make it more probable that he was the thief as "almost everyone, poor or not, has a motive to get more money." *Id.* at 1109. As the court recognized, poverty and addiction have distinctly different effects upon an individual's restraint and desires, but the court's reasoning is nonetheless apropos in cases of addiction.

　█ Where the State seeks to introduce drug addiction without first establishing a defendant's identity as the culprit, his drug addiction has no relevance or probative value as to the motive of an otherwise unknown culprit. In other words, without a sufficient identification of the defendant as the intruder, the necessary chain of reasoning breaks and we need not reach the relationship between drug addiction and motive. In the absence of some identification of the defendant as the intruder, his heroin addiction, though introduced to show motive, would necessarily fill in the missing logical gaps that Rule 404(b) requires a prosecutor to fill. *See Gould v. State*, 579 P.2d 535, 539 (Alaska 1978) (introduction of heroin addiction to provide motive of robber when identity is hotly contested "too attenuated

and possess[es] too many gaps" (quotation omitted)). The resulting inference imparted to the jury is: because the defendant is a drug addict he has the general intent to steal, and because drug addicts steal, it is safe to conclude that this particular drug addict is the unknown culprit in this case. Such reasoning allows the impermissible inference of propensity that the rules of evidence are designed to prevent.

■ Our decision in *Kim*, as well as cases from other states, reveals that when courts have allowed a prior bad act to be introduced to prove motive, the prosecution actually presented sufficient alternate evidence to establish the defendant's identity as the perpetrator. *Kim*, 153 N.H. at 325, 328 (holding evidence of defendant's gambling losses and extramarital affair admissible to show motive to kill when he admitted to police that he drugged and robbed murder victims, but claimed he did not kill them); *see State v. Carapezza*, 191 P.3d 256, 261, 263 (Kan. 2008) (holding crack cocaine addiction admissible to prove motive to kill and rob when accomplice identified defendant and defendant's cell mates testified she had admitted her actions); *Adkins v. Com.*, 96 S.W.3d 779, 783-85, 793 (Ky. 2003) (affirming introduction of drug addiction to prove motive for robbery and murder when defendant admitted to being at victim's house and substantial physical evidence linked him to the murder); *Henness*, 679 N.E.2d at 694 (holding drug addiction admissible to show motive to rob and kill when defendant had the victim's car, check book, and credit cards, told his wife and a friend that he had killed the victim in self-defense, sold the car to a drug dealer, and used all the money from forged checks, credit card cash advances and car sale to purchase and use drugs), *cert. denied*, 522 U.S. 971 (1997). In such cases, the prosecution may introduce the prior bad act to supply the jury with the defendant's motive for an otherwise senseless crime.

■ In this case, Smith's in-court identification was weak. Smith was unable to identify the defendant in photo arrays after the burglary, nor was he able to identify the defendant when police showed him the defendant's picture alone. Yet, at trial, he was able to identify the defendant as the man sitting at counsel table. Despite Smith's difficulty in identifying the defendant, the State was able to introduce strong circumstantial evidence identifying the defendant as the perpetrator: the defendant admitted he was in the area where the suspect disappeared into the woods behind Smith's house; the defendant's stepson watched the police investigate the burglary and made multiple cell phone calls while doing so; the police eliminated all suspects except the defendant; the defendant called a friend and asked if he knew a good tattoo artist who could cover up tattoos; the defendant's wife hid him in the trunk of her car; and, finally, his wife called

a friend and asked if they could hide out. Based upon the evidence at trial, the jury could have easily concluded that the defendant was indeed the intruder.

■ Once the State establishes the defendant's identity, courts in other jurisdictions have ruled that evidence of a defendant's drug use is only admissible to show motive to commit a theft offense if the State establishes that the defendant: (1) "was addicted at or near the time of the offense, and, therefore, compelled to obtain the drug"; and (2) "lacks sufficient income from legal sources to sustain his . . . continuing need for [the drug]." *People v. Jones*, 326 N.W.2d 411, 413 (Mich. Ct. App. 1982); *accord Adkins*, 96 S.W.3d at 793; *People v. Maounis*, 722 N.E.2d 749, 752-53 (Ill. App. Ct. 1999).

■ These cases stand for the general proposition that before evidence of a defendant's drug addiction is admissible, the State must first establish a nexus between the defendant's financial motive to commit the theft offense and his ongoing need to purchase drugs to satisfy his addiction. *See Carapezza*, 191 P.3d at 263. It is not enough for the State merely to show that the defendant was a casual user of drugs. *See United States v. Smith*, 181 F. Supp. 2d 904, 907 (N.D. Ill. 2002), *appeal dismissed*, 70 Fed. Appx. 359 (7th Cir. 2003). "A casual user does not experience the same financial pressures as an addict." *Id.* Thus, "it is not drug use *per se* that supports the underlying inference of financial need that makes the evidence relevant . . . , but rather a demonstration by the government both that the accused has a significant drug habit or addiction and that he did not have the financial means to support it that makes such evidence of drug use relevant to establish a motive" to commit a theft offense. *United States v. Madden*, 38 F.3d 747, 752 (4th Cir. 1994).

■ In this case, there was evidence that in July 2006, the defendant had a heroin "habit" and was a "junkie," which was sufficient to establish the first foundational requirement. There was also evidence that in July 2006, the defendant had recently lost his job and was "usually broke," which was sufficient to establish the second foundational requirement. Because the State provided adequate identity evidence as well as a nexus between the defendant's heroin addiction and motive to steal, the evidence satisfies the first prong of our Rule 404(b) analysis. Because the defendant concedes that the second prong is satisfied, we turn to the third prong.

■ Under the third prong, prior bad act evidence is admissible if the danger of unfair prejudice to the defendant does not substantially outweigh the probative value of the evidence. *State v. Smalley*, 151 N.H. 193, 198 (2004). Evidence is unfairly prejudicial if its primary purpose or effect is to

appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *State v. Hennessey*, 142 N.H. 149, 155 (1997). Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference. *Kim*, 153 N.H. at 330.

██ We accord considerable deference to the trial court's determination in balancing prejudice and probative worth under Rule 404(b). *Id.* To prevail, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

First, we consider the probative value of the evidence. *Smalley*, 151 N.H. at 199. Determining the probative value of evidence entails analyzing *how* relevant it is. *See id.* Relevant evidence may have limited probative value. *Id.* Here, as established above, evidence that the defendant was addicted to heroin at the time of the charged offense was probative of his motive to steal.

██ Next, we consider whether the danger of unfair prejudice to the defendant from admission of this evidence substantially outweighed its probative value. Although we acknowledge that courts in other jurisdictions have found that evidence of a defendant's heroin use is inflammatory, *see State v. Taylor*, 593 S.E.2d 645, 650 (W. Va. 2004), we cannot say that the evidence in this case was so inflammatory as to substantially outweigh its probative value, *see Smalley*, 151 N.H. at 200. Moreover, the trial court admitted the evidence solely on the issue of motive and its limiting instruction minimized the possibility that the jury would misuse the evidence, thus reducing the potential for unfair prejudice. *See Pepin*, 156 N.H. at 279; *State v. Beltran*, 153 N.H. 643, 652 (2006). The jury is presumed to follow the trial court's instructions, thus diminishing any potential for unfair prejudice from admitting evidence that the defendant was addicted to heroin. *See id.*

Because we accord considerable deference to the trial court's balancing, on the close facts of this case and in light of the foregoing analysis, we cannot say that the trial court unsustainably exercised its discretion by allowing the State to admit evidence that the defendant was a heroin addict.

*Affirmed.*

BRODERICK, C.J., and HICKS, J., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. Although the majority correctly holds that the defendant's habitual heroin use was admissible in this case, I disagree with its mandate that the trial court must first determine whether there is sufficient evidence for a jury to find the defendant's identity as the culprit before the State may introduce evidence that a defendant was a habitual heroin user in financial straits.

Like the majority, I believe that there is a logical connection between the challenged act(s) — habitual heroin use plus financial difficulties — and motive to commit the crime charged — burglary (entry with intent to commit a crime, such as theft) — that does not depend upon character-based propensity. Evidence that a person is actively addicted to heroin and lacks the financial means to support this addiction is relevant to show motive because this evidence has a tendency to prove that the person committed "a crime in order to gain money to buy drugs." *Adkins v. Com.*, 96 S.W.3d 779, 793 (Ky. 2003). The inference imparted to the jury is that drug addiction when coupled with financial distress gives a person a motive to commit a theft-related crime, which seems to me to be a permissible inference that does not rely upon character or character-related propensity. Drug addiction and financial distress show a need for money, and, therefore, a motive to steal. *State v. Henness*, 679 N.E.2d 686, 694 (Ohio), *cert. denied*, 522 U.S. 971 (1997); *see United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999) (because drug addiction establishes likelihood of desperate need for money "and lack of self-control," evidence that a person is poor and drug-addicted may be relevant to show motive to commit a crime). Reasoning that a person who is addicted to a drug and who lacks any legitimate source of funds is more likely to have a motive to steal money with which to purchase drugs than a person randomly chosen from the population "does not depend on the application of a character-based propensity inference." Leonard, *Character and Motive in Evidence Law*, 34 LOY. L. REV. 439, 525 (2001).

Once this evidence is used to prove motive, I believe that, depending upon the circumstances of the case, the jury *should* be allowed to infer identity from it. In fact, motive is commonly used to prove identity, and evidence of prior bad acts is one way to prove motive. *See id.* at 440, 463.

In *People v. Talaga*, 194 N.W.2d 462, 463 (Mich. Ct. App. 1971), for instance, to prove that the defendant participated in the armed robbery, the prosecution sought to admit evidence that he was a heroin addict. The defendant appealed, arguing that evidence of his heroin addiction should have been excluded. *Talaga*, 194 N.W.2d at 462. The appellate court affirmed, holding that it tended to establish a motive for armed robbery and that the motive, in turn, tended to rebut the defendant's claim that he was at home and knew nothing of the charge made against him. *Id.* at 463.

To the extent that the majority has ruled that evidence of a defendant's drug addiction plus financial difficulties may *never* be used to prove motive to steal (and thereby be used to prove identity) *unless* the State has presented some threshold alternative evidence of identity, I do not favor such a categorical approach. Although I am sensitive to the majority's concerns, I favor a more case-specific approach. I disagree with the majority's assumption that the chain of reasoning that connects a defendant's drug addiction and financial straits to his motive to steal and to his identity as the perpetrator *always* requires an inference as to the defendant's "character-based propensity to behave in a particular way." Leonard, *supra* at 442. The majority's opinion could, in the future, lead to the exclusion of prior bad act evidence in the trials of *all* cases in which identity is an issue, which I believe would be a mistake. *See* Colb, *"Whodunit" Versus "What was Done": When to Admit Character Evidence in Criminal Cases*, 79 N.C. L. Rev. 939 (2001).