# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0011, <u>State of New Hampshire v. William Patten</u>, the court on December 9, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendant, William Patten, appeals his conviction, following a jury trial in Superior Court (<u>Vaughan</u>, J.), on charges of theft by deception.  <u>See</u> RSA 637:4 (2016).  He argues that: (1) the witness through whom the State introduced certain bank records pursuant to the business records exception to the hearsay rule was not qualified to provide the foundation for the records; and (2) the evidence was insufficient to establish that the property at issue was "property of another" within the meaning of RSA 637:4 and RSA 637:2 (2016).

We first address whether the trial court erred by admitting the bank records.  New Hampshire Rule of Evidence 803(6) provides that the following documents are not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness.

<u>N.H. R. Ev.</u> 803(6).  This rule requires "the custodian of the record, or another qualified witness, to testify about the identity and mode of preparation of the proffered document, and to testify that it was made in the regular course of business at or near the time of the transaction recorded."  <u>State v. Howe</u>, 159 N.H. 366, 374 (2009) (quotation omitted).  "Verification of the authenticity, regularity and correctness of such records by the official having them in charge, or by another qualified witness, constitutes the proper foundation for admission of the proffered record."  <u>Id</u>. (quotation omitted).  "The 'qualified witness' . . . need only be someone who understands the system of how the

document was made, and need not have participated in the document's creation or know who created it." Id. (quotation omitted).

The bank records at issue consist of checks deposited into an account controlled by the defendant, and corresponding deposit slips. We assume, without deciding, that such records would have been barred by the hearsay rule but for the trial court's ruling under Rule 803(6). But see State v. Beede, 156 N.H. 102, 105 (2007) (holding that checks deposited into an account constituted verbal acts that were not barred by the hearsay rule). We will uphold the trial court's ruling absent an unsustainable exercise of discretion. Howe, 159 N.H. at 374. To establish an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

In this case, the State introduced the records at issue through a vice president of the subject bank whose obligations included investigating fraud and complying with subpoenas. He testified that, upon receiving a subpoena, he requests any one of ten bank departments to retrieve the requested records, that the department retrieves the records from the bank's computer system "either by customer name, date of birth, Social, account number, or loan number" and provides them to him, and that he examines the records retrieved to ensure compliance with the subpoena before producing them. With respect to checking account records, he testified that he requests such records from the bank's deposit services department. He further testified that he received a subpoena in this case for records, within a specific time frame, from checking accounts belonging to the defendant and a company that the defendant owned, that he retrieved the requested records, that the records he retrieved reflected transactions that were completed close in time to the dates on the records, and that the bank relied upon the records and maintained them in the ordinary course of its business.

The defendant objected to the introduction of the records, arguing that because the witness "never worked as a teller, never worked in the checking department, never worked as a data entry person," but merely retrieved the documents from others, he lacked sufficient personal knowledge to satisfy the foundation requirements of Rules 602 and 803(6). The trial court rejected this argument, ruling that "the issues raised in . . . [Rule 803(6)] have been covered appropriately by the State." On appeal, the defendant again argues that the witness lacked sufficient personal knowledge to establish the foundation requirements of Rule 803(6). We disagree.

The witness's testimony establishes that his regular duties include investigating fraud and responding to subpoenas, that he is required to know which of ten possible bank departments maintains requested records, and that checking account records are maintained by the deposit services department. His testimony further establishes his personal knowledge that such records are

2

maintained on the bank's computer system, and that they are accessible by customer name, date of birth, social security number, account number, or loan number. According to the witness, he regularly reviews records demanded by subpoena before producing them to ensure their compliance with the subpoena. Under these circumstances, the trial court reasonably could have found that the witness had sufficient knowledge of how the bank creates and maintains checking account records so as to be able to verify the authenticity, regularity, and correctness of the checking account records that he produced pursuant to the State's subpoena. See Howe, 159 N.H. at 374. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion by admitting the records pursuant to Rule 803(6).

We next address whether the evidence was sufficient to prove that the defendant stole "property of another" for purposes of RSA 637:4. We note that the defendant has not provided the numerous exhibits submitted at trial, which included the bank records discussed above as well as other checks, proposals, invoices, e-mails, and photographs, as part of the record on appeal. Accordingly, we assume that the exhibits support the jury's verdict. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

"When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." State v. Sanborn, 168 N.H. 400, 412 (2015) (quotation omitted). We examine each item of evidence within the context of all the evidence, and not in isolation. Id. at 413. The jury "may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." Id. (quotation omitted). The defendant bears the burden of demonstrating that the evidence was insufficient to prove his guilt. Id. at 412.

Under RSA 637:4, I, "[a] person commits theft [by] obtain[ing] or exercis[ing] control over property of another by deception and with a purpose to deprive him thereof." "'Property' means anything of value, including . . . tangible . . . personal property . . . ." RSA 637:2, I. "'Property of another' includes property in which any person other than the actor has an interest which the actor is not privileged to infringe . . . ." RSA 637:2, IV.

The property at issue in this case consisted of items of heating equipment that the defendant sold to, and installed in the homes of, other persons. The indictments alleged that the equipment was the property of the defendant's employer. The evidence at trial establishes that the defendant was employed as a branch manager for a company that supplies home heating fuel, and that both services and sells home heating equipment. His obligations included selling home heating equipment to the employer's customers, which

3

involved ordering the equipment through the employer's vendors and overseeing its installation. The employer specifically prohibited its employees from engaging in "side work" in competition with it.

With respect to the equipment at issue, the evidence establishes that the defendant ordered the equipment through the employer, which purchased and paid for the equipment. The defendant and a colleague, who also was employed by the employer as a branch manager, then installed the equipment in the homes of the employer's customers. The customers, in requesting quotes for the equipment, approached the defendant as an agent of the employer. When the defendant and his colleague installed the equipment, they drove to the customers' properties in the employer's trucks. However, the defendant never billed the customers on behalf of the employer, but instead instructed them either to pay a separate company that he controlled, or to pay him directly. The defendant then split the proceeds with the colleague. Thus, although the employer had paid for the equipment, the employer never received reimbursement for it. The employer discovered the scheme when one of its customers requested that it service a furnace for which it had no record of selling, but had a record of purchasing.

The defendant moved to dismiss at the close of the evidence, arguing that, although "the evidence of record shows that the property was ordered through" the employer, the property was "never in the possession of" the employer. Because the employer never had physical possession of the equipment, and because the evidence showed that the employer paid for the equipment after it was installed, the defendant asserted that the employer never had an ownership interest in it. The trial court denied the motion. On appeal, the defendant again argues that because the employer never "possessed, controlled, or touched" the equipment, it could not have been the employer's property as a matter of law. We disagree.

Regardless of whether the employer ever physically possessed or controlled the equipment, the evidence establishes that the defendant, acting as the employer's agent, caused the employer to purchase it, and that he then sold it, without the employer's authority and without reimbursing the employer, through a separate company that he controlled. Thus, a rational jury reasonably could have found, beyond a reasonable doubt, that the employer had an interest in the equipment, which was tangible personal property, that the defendant was not privileged to infringe. RSA 637:2, I, IV.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

4