Merrimack
No. 2003-198

THE STATE OF NEW HAMPSHIRE

v.

ERIC SMALLEY

Argued: May 5, 2004
Opinion Issued: June 29, 2004

*Peter W. Heed*, attorney general (*Simon R. Brown*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Eric Smalley, appeals his conviction of second-degree murder, *see* RSA 630:1-b (1996), following a jury trial in Superior Court (*McGuire*, J.). He argues that the trial court erred in admitting evidence of his drug-dealing activities pursuant to New Hampshire Rule of Evidence 404(b). We affirm.

The events that culminated in Smalley killing Charles Hawkesworth began in early October 2001, when Tony Clough and his friend, Robert Emra, arranged to sell Andrew Frost a pound of cocaine for $8,400. Instead of selling Frost the drugs, Clough pointed a gun at Frost and robbed him of $8,000. Frost told his friends, Ellsworth Gottlieb and Derek Presha, about the robbery and they agreed to help Frost find Clough and Emra and retaliate.

The opportunity for Frost to get even with Clough and Emra developed on October 12, 2001, when Clough and Emra met Amandra Pelchat at a Manchester nightclub. That evening, Clough invited Pelchat and her friends to a motel party. Coincidently, Pelchat was a neighbor of Frost's friends, Gottlieb and Presha. The next day, she told Presha about her encounter with Clough and Emra. In turn, Gottlieb and Presha told Frost and the three men decided to use Pelchat to lure Clough and Emra into a trap. The three men persuaded Pelchat to invite Clough and Emra to another motel party. The plan was for Gottlieb and Presha to wait for Clough and Emra in the motel room where they would ambush them, break their kneecaps with a baseball bat, bind them with duct tape and hold them until Frost arrived. To carry out the plan, Gottlieb and Presha would disguise themselves with ski masks and be armed with semiautomatic handguns.

On October 15, 2001, Clough and Pelchat rented a room at the Firebird Motel in Hooksett. After renting the room, the two split up, planning to meet in the motel room later in the evening. Pelchat, however, gave the room key to Gottlieb and Presha. At the last moment, Gottlieb and Presha were joined by their friend, Hawkesworth, who insisted on helping them

carry out their plan. Using the room key, Pelchat and the three men entered Clough's motel room to lie in wait.

Meanwhile, Clough became suspicious of the motel party and moved his car away from the motel to a location on the street. Out of sight from the motel room, Clough watched several hooded men enter his room. Clough and Emra then recruited Smalley and two other men to confront the group in the motel room.

Later that evening, Pelchat heard a knock at the motel room door. She opened the door, expecting Clough and Emra. Instead, Smalley, brandishing a semiautomatic handgun, forcefully pushed the door open and stated, "Where are they?" Presha jumped out of the closet and attempted to shoot Smalley, but his gun jammed. Smalley fired at Presha, who dropped to the floor and avoided the gunfire. Hawkesworth joined the fray, but as he exited his hiding place in the bathroom, he was fatally shot by Smalley.

Smalley, Clough, Emra and the two other men immediately left the motel. Shortly thereafter, Frost arrived at the motel. Frost drove Gottlieb, Presha and Hawkesworth to Elliot Hospital in Manchester, where Hawkesworth died. Meanwhile, Smalley gave his gun to his friend, Billy Boutilette. Boutilette wiped the gun clean and buried it in his girlfriend's backyard in Derry. Smalley was subsequently arrested and indicted for first-degree murder. *See* RSA 630:1-a (1996).

Prior to trial, Smalley moved *in limine* to exclude evidence of his drug-dealing activities. Specifically, the challenged evidence included: (1) testimony from inmate informants that Smalley described himself as a drug dealer; (2) marijuana, cocaine, drug-selling paraphernalia and $26,500 found in Smalley's bedroom; (3) a drug transaction in which Boutilette and Michael Roux purchased $28,000 worth of cocaine in New York; and (4) testimony that Smalley held the cocaine from the New York purchase and the proceeds from the resale of the cocaine in his bedroom. At issue was whether evidence of Smalley's drug-dealing activities was relevant to the first-degree murder charge and, if relevant, whether the evidence's probative value was substantially outweighed by the danger of unfair prejudice. The trial court denied Smalley's motions. Before closing arguments, Smalley moved to strike the evidence of his drug-dealing activities, arguing that the evidence was irrelevant in that it failed to establish that "[Smalley]'s motive for going to the Firebird Motel was to protect his business partners and his own business interests." The trial court denied the motion.

A jury found Smalley guilty of second-degree murder. *See* RSA 630:1-b. He was sentenced to thirty-five years to life in the New Hampshire State Prison. This appeal followed.

On appeal, Smalley argues that the trial court erred in admitting evidence of his drug-dealing activities pursuant to Rule 404(b). Smalley points out that the trial court based its pretrial ruling upon an offer of proof made by the State and that the evidence at trial varied significantly from the offer of proof. Because Smalley renewed his objection to the evidence in a motion to strike at the end of trial, we review the evidence presented at trial. *Cf. State v. Vandebogart*, 139 N.H. 145, 165 (1994) (upholding the trial court's denial of motion to suppress because inconsistencies between testimony at the suppression hearing and trial were insufficient to find error). The trial court's ruling, reviewable for an unsustainable exercise of discretion, is reversible only if clearly untenable or unreasonable to the prejudice of the defendant's case. *State v. Brewster*, 147 N.H. 645, 648 (2002); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have established a three-part test to assess the admissibility of evidence under Rule 404(b): (1) the evidence must be relevant for a purpose other than proving the defendant's character or disposition; (2) there must be clear proof that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by its prejudice to the defendant. *State v. McGlew*, 139 N.H. 505, 507 (1995). The State bears the burden of demonstrating the admissibility of the prior bad acts. *Id.* at 509. Here, Smalley challenges the trial court's decision with respect to the first and third prongs of the Rule 404(b) analysis.

*I. First Prong*

In order to meet its burden under the first prong, the State is required to specify the "purpose for which the evidence is offered and ... articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *State v. Glodgett*, 144 N.H. 687, 690 (2000) (quotation omitted). To be relevant under Rule 404(b), the proffered evidence must be pertinent to an issue that is actually in dispute. *Id.* at 691.

Here, Smalley was charged with first-degree murder, which required the State to prove that he acted purposely, with premeditation and deliberation. *See* RSA 630:1-a. In addition, Smalley filed a notice of self-defense, *see* RSA 627:4, II (a) (1996), thus placing his state of mind at issue, *see State v. Dukette*, 145 N.H. 226, 232 (2000). As the trial court aptly noted: "By the nature of the charge against [Smalley] and his claim of self-defense, [Smalley's] state of mind at the time he shot Charles Hawkesworth and his motivation and purpose in going to the Firebird Motel are clearly in issue."

To ensure that the relevant link between the prior bad acts and the charged conduct is not merely Smalley's bad character, there must exist a sufficient logical connection between the prior acts and his state of mind at the time of the charged conduct. *Dukette*, 145 N.H. at 230. The State argues that Smalley's drug-dealing activities explained his relationship with Clough and the others at the Firebird Motel, which is relevant to his motivation and purpose on the night of the shooting.

We conclude that there is a sufficient logical connection between Smalley's drug-dealing activities and his state of mind on the night of the shooting. First, the evidence of Smalley's drug-dealing activities explains his business relationship, beyond friendship, with Clough and the people at the Firebird Motel. The evidence showed that Smalley had an arrangement for the purchase, handling and resale of cocaine with Boutilette, who was involved in a drug-dealing partnership with Clough. The partnership purchased cocaine from New York City for $28,000 and resold the cocaine in New Hampshire. The profit from the resale was put into a fund for future purchases. The partnership, however, had been having problems with its cocaine supply for four weeks. Clough and Boutilette had previously sold cocaine to Frost. Moreover, an inmate informant, based upon his conversations with Smalley, described Smalley's relationship with Clough and Emra as "[h]is posse, his crew." The informant understood this relationship to mean that "they dealt drugs." The drugs, drug paraphernalia and money found in Smalley's room corroborated the testimony establishing the drug-dealing business.

Second, the drug-dealing relationship was relevant to explaining Smalley's motivation and purpose in going to the Firebird Motel. According to an inmate informant, Smalley described the incident at the Firebird Motel as a result of "bad blood between [Frost] and his people toward [Clough] and his crew" because Clough robbed Frost. Smalley said that once Clough became suspicious of the motel party, Clough went to get "his crew," Emra and Smalley, and they went to the Firebird Motel to "do what had to be done to help [Clough]." In addition, Smalley's trouble with his drug connections was "one of his own reasons why he went [to the

motel] that night." Overall, the incident was described as "a conflict between two groups of people which [Frost] was the leader of one group and [Clough] was the leader of the other group and the conflict stemmed from a drug deal that turned sour."

Therefore, to prove that Smalley acted with premeditation and deliberation and to disprove that he acted in self-defense, Smalley's drug-dealing activities with Clough and Boutilette were relevant. The State did not use the evidence to prove bad character, but rather to prove Smalley's motivation for the shooting. The State used the evidence of Smalley describing himself as a drug dealer, the details of the New York cocaine purchase, and the drugs, drug paraphernalia and $26,500 found in Smalley's room to connect Smalley with Clough and Boutilette and to show that they were all part of the same drug enterprise. This business relationship, combined with the group's difficulties in getting cocaine from their drug connection for weeks and their savings for the purchase of additional cocaine from New York, painted a picture of a drug gang struggling to survive. The evidence was proof that Smalley's motivation for going to the motel with Clough was not just to protect his friend, but to preserve his livelihood.

██ Thus, the trial court did not err in ruling that "[t]he nature of [Smalley's] relationship with the people with whom he went to the Firebird Motel and his knowledge of and involvement with illegal drug sales are also relevant" to his state of mind and, therefore, it was properly admitted for purposes other than bad character and propensity under Rule 404(b).

*II. Third Prong*

██ Smalley next argues that the trial court erred in its analysis under the third prong of Rule 404(b). Under this prong, prior bad act evidence is admissible if the danger of unfair prejudice to the defendant does not substantially outweigh the probative value of the evidence. *Id.* at 231. We will consider such factors as whether the evidence would have a great emotional impact upon a jury, its potential for appealing to a juror's sense of resentment or outrage, the extent to which the issue upon which it is offered is established by other evidence, stipulation, or inference, *id.*, and whether the evidence is relevant to prove an issue that is actually in serious dispute, *State v. Richardson*, 138 N.H. 162, 166 (1993). We accord considerable deference to the trial court's determination in balancing prejudice and probative worth under Rule 404(b). *Richardson*, 138 N.H. at 166. To prevail, Smalley must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See Dukette*, 145 N.H. at 231.

First, we consider the probative value of the evidence. As set forth above in our first-prong analysis, the evidence of Smalley's drug-dealing activities was relevant. We acknowledge that the evaluation of the probative value of the evidence overlaps with the relevancy determination. We note, however, that although evidence may be relevant, it may have minimal probative value. *See State v. Pelkey*, 145 N.H. 133, 136 (2000). Having found that evidence of Smalley's drug-dealing activities is relevant, we must now determine its probative value, *i.e.*, the extent of its relevance. Because "extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct," *id.* (quotation omitted), we conclude that evidence of Smalley's drug-dealing activities was highly probative of his state of mind on the night of the shooting.

Smalley's state of mind when he shot Hawkesworth was the central disputed issue in this case. As we stated in our first-prong analysis, the challenged evidence was relevant to proving Smalley's drug supply troubles and business relationship with Clough and, thus, his state of mind in going to the motel. Moreover, although there was other evidence that Smalley knew that Clough had robbed Frost and that there were other people in Clough's motel room, the challenged evidence was the only evidence of Smalley's motivation, beyond friendship, for going to the motel to protect Clough and his business interests. Therefore, the challenged evidence added significant incremental value in addressing the central issue of Smalley's state of mind.

■ Next, we consider whether the prejudice to Smalley substantially outweighed the evidence's probative value. Smalley argues that the trial court erred in determining that the evidence of his drug-dealing activities was not unfairly prejudicial. The trial court found that the evidence was not unfairly prejudicial for three reasons: (1) evidence of drugs and drug-dealing pervaded the case, thus allowing the jurors to infer that Smalley was similarly involved; (2) the drug-dealing evidence was not similar to the charged crime; and (3) the evidence was not inflammatory. We agree.

First, aside from the challenged evidence, other evidence that Smalley associated closely with drug dealers pervaded this case. Throughout trial, the jury would have drawn inferences from other evidence that Smalley was involved in drug-dealing activities. *See State v. Roberts*, 136 N.H. 731, 748 (1993). Drug-dealing activities were ubiquitous in the facts of the case and Smalley could hardly escape the taint of their inferences. Unchallenged evidence included the fact that Clough was a drug dealer who robbed Frost, another drug dealer. Smalley knew that Frost was

seeking revenge for the robbery and eagerly assisted Clough in foiling the retaliation. Finally, after shooting Hawkesworth, Smalley gave his gun to Boutilette, another admitted drug dealer. It would hardly be possible for the jurors not to infer that Smalley was likewise engaged in drug dealing. For these reasons, we are not convinced that Smalley would have been in a better position if the evidence of his drug dealing activities had been excluded. *See id.*

Second, Smalley was charged with first-degree murder, which differs significantly from his drug-dealing activities. "[U]nfair prejudice is inherent in evidence of other similar crimes or prior convictions." *State v. Bassett*, 139 N.H. 493, 502 (1995). "[T]he degree of prejudice inherent in a reference to another charge may depend upon the similarity of the 'other incident' to that for which the defendant is currently on trial." *State v. Drew*, 137 N.H. 644, 649 (1993). The drug-dealing activities in this case were not similar to murder or violent in nature.

Third, evidence of Smalley's drug dealing was not so inflammatory as to outweigh its highly probative nature. "In weighing prejudice, a trial court must consider for the record the nature of the other bad act. Some acts have a great emotional impact upon a jury and have greater potential for appealing to a juror's sense of resentment or outrage." *McGlew*, 139 N.H. at 510.

Smalley argues that selling drugs is the type of act that will appeal to a juror's outrage. While the trial court held that selling drugs was not such an act, we have previously held to the contrary. In *Pelkey*, we held that a danger of unfair prejudice arose from the possibility that the jurors may have treated the defendant unfairly because they believed that he was a drug dealer. *Pelkey*, 145 N.H. at 136. Because of the very nature of the evidence of Smalley's drug-dealing activities, there is a significant potential for prejudice. *See id.*

When evidence presents a potential for prejudice, "such evidence must possess significantly greater probative value to be admissible." *McGlew*, 139 N.H. at 510. "[C]ourts have noted that while evidence of a prior offense or bad act is always prejudicial, the prejudice is frequently outweighed by the relevancy of the evidence when a defendant's knowledge or intent is a contested issue in the case." *Dukette*, 145 N.H. at 232 (quotation omitted). As we noted above, the challenged evidence presents proof of Smalley's state of mind during the shooting, the central issue of the case. The probative value of such evidence is not substantially outweighed by any unfair prejudice from the potentially inflammatory nature of the prior bad acts. Furthermore, defense counsel screened the jury panel with *voir dire* questions on drug dealing and, thus, lessened the risk of unfair prejudice. *See Roberts*, 136 N.H. at 747.

Because the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice to Smalley, we conclude that the trial court's ruling was not clearly untenable or unreasonable to the prejudice of the defendant's case.

*Affirmed.*

NADEAU, DALIANIS and GALWAY, JJ., concurred.