Rockingham
No. 2003-795

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH SAWTELL

Argued: February 9, 2005
Opinion Issued: May 9, 2005

*Kelly A. Ayotte*, attorney general (*Charles J. Keefe*, assistant attorney general, on the brief and orally), for the State.

*Gleason Law Offices, P.C.*, of Haverhill, Massachusetts (*Scott F. Gleason* and *Thomas J. Gleason* on the brief, and *Scott F. Gleason* orally) for the defendant.

NADEAU, J. The defendant, Joseph Sawtell, appeals his conviction in the Superior Court (*Coffey*, J.) of first degree murder. *See* RSA 630:1-a (1996). We affirm.

The record supports the following facts. On September 19, 2002, the defendant allegedly shot the victim, his nineteen-year-old girlfriend, Crystal Sheehan, four times with a .357 magnum revolver and then shot himself in the chest. The defendant and the victim had been involved in a relationship for about one year prior to her murder, and the victim had given birth to the defendant's son approximately two months earlier. Prior to the murder, the defendant had, on several occasions, expressed unhappiness about the victim's pregnancy, thrown her out of their apartment and threatened to harm her. Thus, the State's theory was that "the birth of the baby created a conflict between the defendant and [the victim] and the defendant's demonstrated dislike of living with the baby

evidences his motive in carrying out [the victim's] murder and his failed suicide."

On appeal, the defendant challenges the introduction of three pieces of evidence: (1) an inculpatory statement he made to a nurse who was treating him; (2) testimony of witnesses as to his unhappiness about fatherhood and removal of the victim and their son from their apartment; and (3) testimony of witnesses that he had previously threatened the victim with a gun.

■ We review a trial court's decision on the admissibility of evidence under an unsustainable exercise of discretion standard. *State v. Amirault*, 149 N.H. 541, 543 (2003). To meet this standard, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to his prejudice. *Id.*

We first consider the challenge to the nurse's testimony about the defendant's statement that he shot himself. The defendant argues that its introduction violated the physician-patient privilege, *see* RSA 329:26 (2004); N.H. R. Ev. 503(a), because his statement was made to the hospital nurse who was providing care and treatment to the defendant under instructions from a treating physician, and was necessary for diagnosis and treatment.

RSA 329:26 provides in relevant part:

> The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and the patient of such physician or surgeon are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications. Confidential relations and communications between a patient and any person working under the supervision of a physician or surgeon that are customary and necessary for diagnosis and treatment are privileged to the same extent as though those relations or communications were with such supervising physician or surgeon.

■ Traditionally, we have carefully guarded the confidential relationship between patients and their medical providers. *In re Grand Jury Subpoena (Medical Records of Payne)*, 150 N.H. 436, 440 (2004). The physician-patient privilege is meant to encourage the patient to disclose relevant facts fully so as to receive complete and appropriate treatment. *State v.*

*Kupchun,* 117 N.H. 412, 415 (1977). The privilege parallels the Hippocratic oath in recognizing that much of what a physician learns from his patient may be both embarrassing and of little real consequence to society. In order to insure that the patient may reveal facts that could be necessary to successful treatment without fear of humiliation, the legislature has granted the patient a privilege protecting statements made to a physician for purposes of treatment. *Nelson v. Lewis,* 130 N.H. 106, 109 (1987). Thus, when construing the physician-patient privilege, we do so strictly. *See State v. Elwell,* 132 N.H. 599, 605 (1989).

■ A careful review of the record reveals that the statement was not made for the purpose of obtaining a diagnosis or treatment. Rather, the nurse testified that the statement was made while she was explaining the defendant's injuries to him: "When I described the track the bullet had taken through his chest, [the defendant] made the statement that, 'I was aiming for my heart.'" The record reflects that at the time the defendant made the statement the nurse was not attempting to elicit any information from him nor was the defendant responding to any questions posed by her. In addition, there was no evidence presented at trial that the nurse used the information in any way to treat or diagnose the defendant. In fact, at the time the statement was made the defendant had already received treatment and, in any event, the statement was not necessary for his treatment. Thus, the statement was not "essential in procuring information necessary for treatment or diagnosis." *Elwell,* 132 N.H. at 605. Accordingly we hold that the statement was not protected under RSA 329:26.

Even if the introduction of the statement were erroneous, the error was harmless. The statement itself was cumulative of similar statements made by the defendant at the murder scene, as testified to by three witnesses. We do not agree with the defendant's contention that the statement made to the nurse would appear more credible and thus be more prejudicial than the statements made immediately after the murder because the statement to the nurse was made "after he had been treated and stabilized in a hospital and was resting comfortably" while the statements to the other witnesses were made when he was "injured and in great pain."

Next, the defendant argues that the admission of evidence regarding his unhappiness about being a father and his attempts to evict the victim from the apartment violated New Hampshire Rule of Evidence 403, as the evidence was substantially more prejudicial than probative.

New Hampshire Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Whether the probative value of certain evidence is substantially outweighed by the danger of unfair prejudice is a matter within the trial court's discretion, and we will not disturb that determination absent an unsustainable exercise of discretion. *State v. Plch*, 149 N.H. 608, 621 (2003). Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *State v. Pelkey*, 145 N.H. 133, 136 (2000). Unfair prejudice is not mere detriment to a defendant from the tendency of the evidence to prove his guilt. *State v. Cochran*, 132 N.H. 670, 672 (1990). Rather, the prejudice required for reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged. *Id.*

We disagree with the defendant that the evidence concerning his dislike of being a parent and attempts to evict the victim and his son from the home was more prejudicial than probative. The evidence was relevant and highly probative of the defendant's motive to commit murder. The defendant has failed to show how this evidence, or its effect, was to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or call upon the jury to make a decision based upon emotion. We hold that the evidence had sufficient probative value such that the trial court properly exercised its discretion in concluding that its probative value was not substantially outweighed by the danger of unfair prejudice.

Finally, the defendant argues that the admission of evidence of his prior threats to the victim with a gun violate New Hampshire Rule of Evidence 404(b). Specifically, he argues that the prior incidents, which occurred ten months and five months prior to the murder, lacked temporal proximity to the crime. We disagree.

We review the trial court's admission of evidence pursuant to Rule 404(b) for an unsustainable exercise of discretion. *State v. Smalley*, 151 N.H. 193, 196 (2004). The purpose of Rule 404(b) in a criminal trial is to

ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based on evidence of other crimes or wrongs. *State v. Bassett*, 139 N.H. 493, 496 (1995). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Evidence of other crimes is not admissible unless: (1) it is relevant for a purpose other than to show the defendant's bad character or disposition; (2) there is clear proof that the defendant committed the other crimes or acts; and (3) prejudice to the defendant does not substantially outweigh the probative value of the evidence. *Bassett*, 139 N.H. at 496.

We have previously held that prior threats and assaults by a defendant against a victim were relevant to prove the defendant's intent and therefore admissible under Rule 404 (b). In *State v. Dukette*, 145 N.H. 226, 230 (2000), we concluded that evidence of prior assaults was admissible because the prior conduct involved the same victim, a similar weapon, and occurred in a like circumstance. *Id.* Here, as in *Dukette*, the prior acts involved the same parties, a similar, if not identical weapon, and occurred under similar circumstances.

■ We disagree with the defendant's argument that the prior incidents lacked sufficient proximity to be relevant pursuant to Rule 404 (b). In *State v. Allen*, 128 N.H. 390, 397 (1986), an attempted murder case, we held that evidence of the defendant's entry into the victim's house with a loaded revolver, which occurred three years earlier, was admissible and relevant to prove the defendant's intent. Here, one incident occurred approximately five months before the murder, and the other incident occurred approximately ten months before the murder.

Thus, under the facts of this case, we find the evidence of the prior threats was admissible because the threats were relevant to prove the defendant's intent and did not lack temporal proximity to the crime.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.