NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2015-0289

THE STATE OF NEW HAMPSHIRE

v.

THOMAS MILTON

Argued: October 19, 2016
Opinion Issued: November 17, 2016

Joseph A. Foster, attorney general (John J. McCormack, assistant attorney general, on the brief and orally), for the State.

Lothstein Guerriero, PLLC, of Keene (Richard Guerriero on the brief and orally), for the defendant.

HICKS, J. The defendant, Thomas Milton, appeals his conviction, following a jury trial in Superior Court (Smukler, J.), on one count of second degree murder, one count of assault by a prisoner, and one count of falsifying physical evidence. See RSA 630:1-b (2016); RSA 642:9 (2007) (amended 2010); RSA 641:6 (2016). We affirm.

I. Background

The relevant facts follow. The charges against the defendant stem from events occurring on July 26, 2010, at the New Hampshire State Prison where

the defendant and the victim were then incarcerated. The defendant was a member of a prison gang known as the Brotherhood of White Warriors (BOWW), and had been ordered by Frankie Philbrook, a high-ranking member of BOWW, to assault the victim because Philbrook believed the victim was a "rat" (i.e., that the victim had provided incriminating information about Philbrook to authorities). The relevant indictments allege that the defendant assaulted the victim by striking him in the head, and that he, acting in concert with another inmate, caused the victim's death by repeatedly striking him in the head and face. The defendant admitted to striking the victim once in the head, but denied striking him repeatedly thereafter.

Before trial, the State moved in limine to admit expert testimony relating to BOWW's existence, organizational structure, membership process, and culture, as well as evidence of the defendant's affiliation with the organization. The defendant filed a partial objection, which stated that he had "no objection to disclosure to the jury of his membership in BOWW," but argued that the "[a]dmission of evidence regarding BOWW['s] organizational structure, membership process, and culture" would violate New Hampshire Rule of Evidence 403. (Quotation omitted.) After a hearing, the trial court granted the State's motion, in part. In its ruling, the trial court permitted the State to present expert testimony relating to BOWW's organizational structure and culture to "establish a motive for the inexplicable attack on [the victim]," and to explain "how fear of gang retaliation would affect the testimony of witnesses, and tend to make them less cooperative with law enforcement." However, the ruling prohibited the expert from testifying "to evidence a jury could readily understand," including evidence that BOWW believed the victim "ratted" on a gang member, that BOWW ordered the attack, and that the defendant held the position of "lieutenant" within the organization. The trial court explained that this evidence "would be admissible if obtained from a percipient witness," but that it was "not expert testimony."

At trial, the State's expert testified that BOWW's members, all white males, formed the gang in 2005 to protect themselves from other gangs at the prison. He explained that BOWW maintains a paramilitary ranking structure, that its members generally share a common "white supremacy" ideology, and that its motto is "God forgives and BOWW don't." According to the expert, members must abide by certain rules including following orders under the chain of command, and not "ratting." He explained that a member's failure to follow the rules results in a "violation" and that possible consequences for violations include "a punch in the ribs," being "punch[ed]" by "a couple [of] guys," or being "thrown out" of BOWW. He also explained that there are varying levels of violations, and that a BOWW member who "rats" would "most likely be kicked out of the gang, assaulted, or really anything." Additionally, the State's expert testified that gang-related cases in the prison are generally difficult to investigate because people are typically reluctant to cooperate with

investigators, and because victims of gang-related assaults do not usually report the incident to prison authorities.

Also at trial, the defendant presented the testimony of an inmate who corroborated the defendant's description of events by testifying that the defendant did not repeatedly strike the victim. On cross-examination, the State elicited testimony, over the defendant's relevance objection, that the inmate had been assaulted by another inmate several months before testifying at the defendant's trial. The inmate admitted that his attacker had a BOWW tattoo, and that, during the assault, his attacker said, "You want to tell on [the victim]." He agreed that the assault occurred shortly before a hearing in another criminal case in which the State planned to call him as a witness. That case did not involve the defendant, but was related to the July 26, 2010 attack on the victim.

The jury found the defendant guilty on all charges, and this appeal followed.

II. Analysis

On appeal, the defendant argues that the trial court erred by failing to properly limit the introduction of evidence relating to BOWW. Specifically, he asserts that the following evidence was inadmissible under New Hampshire Rule of Evidence 403: (1) "BOWW crimes [in] which [the defendant] played no role"; (2) BOWW's organizational rules; and (3) BOWW's retaliation against witnesses. He contends that, because such evidence was admitted, he "was tried, in significant part, on evidence of a prison gang's wide-ranging criminal conduct which was not fairly attributable to [him] and which unfairly prejudiced him in the eyes of the jury."

As a threshold matter, the State argues that the defendant waived his argument related to evidence of BOWW's organizational rules. We disagree. Contrary to the State's contention, defense counsel did not limit the scope of his objection at the motion in limine hearing. Rather, when asked whether the admission of expert testimony to explain witnesses' reluctance to testify was "the one ruling [he took] the most issue with," defense counsel stated, "that's about as much of an objection as I'm going to make beyond . . . what's in my pleading." (Emphasis added.) Thus, although the defendant focused primarily upon a single argument at the hearing, he did not concede the remaining arguments raised in his objection. Cf. Milliken v. Dartmouth-Hitchcock Clinic, 154 N.H. 662, 669-70 (2006) (concluding that plaintiffs waived appellate argument by conceding issue in trial court). Accordingly, we address the merits of the defendant's arguments.

"The trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of

discretion." State v. Towle, 167 N.H. 315, 320 (2015). To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. State v. Legere, 157 N.H. 746, 758 (2008).

Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Relevant evidence is generally admissible. See N.H. R. Ev. 402. However, New Hampshire Rule of Evidence 403 operates as "an exclusionary rule that cuts across the rules of evidence." State v. Kuchman, 168 N.H. 779, 789 (2016) (quotation omitted). It states, in relevant part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403.

"Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." Towle, 167 N.H. at 323. "Unfair prejudice is not mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." Id. "Rather, the prejudice required to necessitate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id.

> Among the factors we consider in weighing [the probative value of] the evidence [against the danger of unfair prejudice] are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation, or inference.

Id. at 323-24.

"The trial court can, however, obviate the danger of unfair prejudice by such actions as issuing a limiting instruction to the jury or limiting the scope of the evidence that the parties are permitted to present to the jury." Id. at 324. "The trial court is in the best position to gauge the potential prejudicial impact of particular testimony, and to determine what steps, if any, are necessary to obviate the potential prejudice." Id.

A.  Expert Testimony

The defendant first argues that the trial court should have excluded the expert testimony regarding BOWW pursuant to New Hampshire Rule of Evidence 403 because the evidence's probative value was substantially outweighed by the danger of unfair prejudice.

To convict the defendant of second degree murder, the State was required to prove that the defendant acted "recklessly . . . under circumstances manifesting an extreme indifference to the value of human life . . . ."  "A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."  RSA 626:2, II(c) (2016).  "The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation."  Id.

With respect to probative value, the defendant acknowledges that the expert's testimony was relevant to his motive, opportunity, and intent, and to the credibility of witnesses.  However, he asserts that the expert's testimony was only minimally probative of his motive and intent because he admitted that "he hit [the victim] and knocked him down" and that "he committed the assault at the behest of other BOWW members."  Essentially, he contends that, as a consequence of his admissions, "there was little need for the State to prove motive."  He also asserts that the expert's testimony was only minimally probative of the witnesses' credibility and reluctance to testify, claiming that "[i]t is well-known . . . that cooperating witnesses are disfavored by all prison inmates."  We disagree.

As the parties recognize, the expert's testimony was probative of the defendant's intent and motive.  See Legere, 157 N.H. at 760 (concluding expert gang testimony was relevant to the defendant's intent and motive).  It helped to explain BOWW's rules, particularly those regarding "ratting" — conduct in which the gang believed the victim had engaged.  It also informed the jury of BOWW's chain of command and the violent manner in which the gang enforces its orders.  This information helped to explain why the defendant would act against the victim and the degree of violence that he used.  See id. (concluding expert gang testimony was admissible to explain why the defendant would murder a man wearing a particular shirt).  The expert testimony regarding the violent nature of BOWW's enforcement methods created a strong inference that the defendant acted with the requisite level of intent in order to avoid BOWW retribution.  Cf. State v. Addison (Capital Murder), 165 N.H. 381, 467 (2013) (reasoning that evidence of the defendant's participation in other crimes was probative of the defendant's motive and intent to "take extreme measures to avoid capture"), cert. denied, 136 S. Ct. 812 (2016).

5

We disagree with the defendant's contention that "there was little need for the State to prove motive." Although the defendant admitted that he committed the assault at the direction of BOWW leadership, he denied that it was he who struck the victim repeatedly in the head and cleaned up the crime scene afterwards. Moreover, he did not concede the issue of intent with respect to any of the three charges. His motive and intent thus remained at issue. See State v. Pepin, 156 N.H. 269, 279 (2007) ("When intent is not conceded by the defense, and it is an element of the crime to be proven by the State, it is sufficiently at issue to require evidence at trial." (quotation omitted)).

The expert's testimony was also probative on the issue of witness credibility. Specifically, the expert's testimony helped to explain why some of the witnesses at trial were reluctant to cooperate. See Legere, 157 N.H. at 761 (explaining that evidence of street gang's violent nature and general disregard for societal rules was probative of witness credibility "because it explained why some witnesses might be reluctant to cooperate"). A number of the parties' witnesses were current and former prison inmates who had been reluctant to cooperate with investigators out of fear for their safety. The expert's testimony regarding BOWW's violent enforcement of its rules helped to explain this fear. See id. Additionally, the expert's testimony that such reluctance is commonplace in gang-related cases was helpful to further aid the jury in assessing the reluctant witnesses' credibility. See id. ("Knowledge of the witnesses' fears of retaliation coupled with the understanding that such fears were common in cases of this nature would give the jury a basis to evaluate their credibility.").

We are not persuaded by the defendant's argument that the expert's testimony on this point was unnecessary because it is "well-known" that contempt for cooperating witnesses is "part of prison culture[.]" We have noted, in another context, that prisoners may "look unkindly upon those who willingly cooperate with the authorities." Sanguedolce v. Wolfe, 164 N.H. 644, 647 (2013). However, even if we were to assume that the average juror is aware of such sentiments, here, the State theorized that the witnesses' reluctance to cooperate stemmed, not from fear of retaliation from the general prison population, but rather from a particularized fear of retaliation from BOWW. The average juror would be ill-equipped to assess the reasonableness of this particularized fear absent expert testimony on the matter. We, therefore, cannot conclude that the expert's testimony offered "limited value" on the issue of witness credibility.

As to unfair prejudice, we have previously recognized that "the potential for prejudice in the introduction of gang evidence is apparent." Legere, 157 N.H. at 761. However, this potential "does not necessarily make the evidence inadmissible." Id. Rather, we must consider "whether the probative value is substantially outweighed by the danger of unfair prejudice." Id. "[W]e afford

6

considerable deference to the trial court's determination in balancing prejudicial impact and probative worth." Towle, 167 N.H. at 324.

The defendant argues that the probative value of the expert's testimony was substantially outweighed by the danger of unfair prejudice. He claims that the expert's testimony, in effect, "told the jury that [violent] crimes are routine for BOWW members" and "wrongly labeled [him] as the paradigmatic BOWW member, bent on violence and obstruction of the truth." He also argues that, in light of other evidence admitted at trial, the expert's testimony was unnecessarily cumulative. We disagree.

The record supports the trial court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. As noted above, the expert testimony was probative of witness credibility and the defendant's motive and intent. Because these issues were contested at trial, the probative value of the expert testimony was not insignificant. Cf. State v. Ayer, 154 N.H. 500, 513 (2006) (concluding that evidence relevant to the defendant's intent carried "significant" probative value because his "intent was central to the trial"). Further, the prejudicial impact of the expert's testimony on the defendant was limited. Although the expert testified that BOWW members generally share a common white supremacy ideology, he also admitted on cross-examination that "there are people who" join BOWW "strictly for protection without really buying into the whole ideology," which helped to limit the impact of any prejudice. Additionally, although the expert testified that BOWW regularly responded to rule violations with violence, this testimony was not graphic, and was, consequently, less likely to provoke the jury's instinct to punish.

The prejudicial impact of the expert testimony was also limited by the introduction of other evidence at trial. Specifically, the defendant offered testimony that BOWW held white supremacist views and that he "would probably have gotten jumped" if he refused to follow BOWW's orders. Additionally, certain of the inmate witnesses agreed that they were initially reluctant to testify out of fear for their safety. A jury could infer from this testimony that BOWW was likely to respond with violence to the defendant's failure to follow orders and to the inmates' "ratting." This inference limited the prejudicial impact of the expert's testimony that BOWW members generally share a common white supremacy ideology and that BOWW generally responds to rule violations with violence. See Addison (Capital Murder), 165 N.H. at 473-74 (affirming trial court's decision to display video of defendant committing armed robbery, in part, because jury had heard evidence that he participated in the robbery through the testimony of other witnesses).

7

B.  Inmate's Testimony about Separate Assault

The defendant also challenges the trial court's ruling admitting evidence of the pretrial assault on an inmate witness by another inmate with a BOWW tattoo.  The defendant argues that the trial court should have excluded the inmate's testimony relating to the pretrial assault pursuant to New Hampshire Rule of Evidence 403.  He appears to acknowledge that the testimony was relevant to the credibility of the inmate.  He argues, however, that the evidence's probative value was substantially outweighed by the danger of unfair prejudice.  He claims that he was unfairly prejudiced because the inmate's testimony "allowed for the possible inference by the jury that [he] was involved in the attack."  We disagree.

Evidence of the pretrial assault was probative of the inmate's credibility because it evidenced his motive to deny the defendant's involvement in the acts underlying the second degree murder charge.  Cf. State v. Russell, 159 N.H. 475, 485 (2009) (concluding subsequent bad act evidence of defendant's threats against witness was relevant to witness's motive to lie); see also Legere, 157 N.H. at 761 ("Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness." (quotation and ellipsis omitted)).

As to the matter of prejudice, we disagree that the inmate's testimony supported an inference that the defendant continued his affiliation with BOWW or that he was complicit in the assault on that inmate.  The inmate did not testify that the defendant was still a member of BOWW or that he was involved in the attack.  Rather, at the defendant's request, the State elicited testimony that the attack occurred just before a hearing that did not involve the defendant.  Additionally, the defendant later offered testimony that he had severed his connection with BOWW in the year leading up to his trial.

Given these circumstances, we conclude that the record supports the trial court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  We hold that the trial court did not unsustainably exercise its discretion when it admitted the inmate's testimony about the pretrial assault.

Finally, any issues raised in the defendant's notice of appeal, but not briefed, are deemed waived.  See State v. Cooper, 168 N.H. 161, 171 (2015).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.