NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2020-0165


STATE OF NEW HAMPSHIRE

v.

DASWAN JETTE

Argued: October 20, 2021
Opinion Issued: December 14, 2021


John M. Formella, attorney general (Nicole M. Clay, assistant attorney general, on the brief, and Benjamin Agati, senior assistant attorney general, orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


DONOVAN, J.  The defendant, Daswan Jette, appeals his conviction, following a jury trial in the Superior Court (Kissinger, J.), on one count of reckless manslaughter.  See RSA 630:2, I(b) (2016).  The defendant argues that the trial court: (1) erred by excluding evidence that, more than one month before her death, the victim sold drugs to an individual who paid her with counterfeit money; and (2) may have erred by failing to order the disclosure of

certain records submitted for in camera review.  We conclude that, even if the victim's prior drug sale was relevant to the defendant's self-defense claim, the trial court properly excluded evidence of the previous sale pursuant to New Hampshire Rule of Evidence 403.  We further conclude that the trial court did not err by withholding certain records that it reviewed in camera.  Accordingly, we affirm.

## I. Facts

The jury could have found the following facts.  In May 2017, the defendant, a Massachusetts resident, was staying with his girlfriend at her apartment in Concord.  In late May, the defendant texted SC — one of the victim's friends — about purchasing marijuana.  Because SC did not have enough marijuana to fulfill the defendant's request, he asked the victim if she could provide some of her own.  The victim agreed and, over the course of several days, SC and the defendant negotiated the sale of the marijuana and scheduled the delivery of the drugs at the Concord apartment.

On the evening of the transaction, SC sent a text to the defendant stating that he was outside in a parked vehicle.  When the defendant approached the vehicle, SC and the victim were seated in the back, and two of their friends were seated in the front.  The defendant did not know anyone in the vehicle.  After identifying SC as the person with whom he had been negotiating, the defendant entered the vehicle and sat next to SC.  The defendant asked if he could weigh the marijuana, and SC agreed.  Before completing the transaction, the defendant exited the vehicle with the bag of marijuana and ran toward the vestibule of the apartment building.

Believing that the defendant was attempting to steal the marijuana, SC, the victim, and the front seat passenger followed the defendant into the vestibule, while the driver remained in the vehicle.  A physical altercation ensued.  SC pushed the defendant into a wall and, along with the victim, cornered the defendant in the vestibule.  SC and the victim then began demanding that the defendant return the bag of marijuana.  The defendant brandished a knife and threatened to stab someone.  SC responded by placing the defendant in a headlock, while the victim and the passenger restrained each of the defendant's arms.  The victim recovered the bag of marijuana, disarmed the defendant, and discarded the knife.  After pushing the defendant one last time, SC returned to the vehicle accompanied by the victim and the passenger.

At some point during the altercation, the victim sustained three stab wounds, one of which penetrated her heart and caused her death.[1]  SC, the

---

[1] According to the State's medical examiner, the other two stab wounds were inflicted to the victim's right knee and left buttock.

2

driver, and the passenger testified that the defendant followed the victim back to the vehicle, reached into the back seat, and stabbed her multiple times. The defendant denied returning to the vehicle, asserting that he ran to his girlfriend's apartment immediately after the altercation and that he did not know that anyone had been stabbed until the next day. Following an investigation, the defendant was indicted on one count of first degree murder and one count of second degree murder.

Prior to trial, the State moved to exclude evidence of the victim's prior drug activity and information recovered from her cell phone. The defendant objected, arguing that the evidence was relevant to his self-defense claim. Specifically, the defendant pointed to a series of text messages between SC and the victim indicating that, more than one month before the transaction with the defendant, an individual unrelated to this case purchased marijuana from the victim with counterfeit money. The individual had originally contacted SC to purchase marijuana, but because SC didn't have enough product, he referred the individual to the victim. The victim's text messages conveyed her frustration with the prior theft, stating, in part: "I'm just so sick of getting robbed. I don't understand like I've literally never robbed anyone before . . . . Yet it seems like these broke b*****s never want to pay me." Other text messages conveyed the victim's desire to slash the prior buyer's tires and "rob him back."

In his objection to the State's motion, the defendant argued that the prior drug sale and related text messages were "relevant to establish motive and bias for the reactions of [the victim] and [SC]" toward the defendant on the night of the altercation. According to the defendant, the evidence was "highly probative" because "the outcome of this prior drug deal angered [the victim], and . . . may have influenced her behavior" toward the defendant on the night of the homicide. The defendant posited that the prior drug sale changed "the way [in which SC] and [the victim] did business, which led to heightened tensions, which led to the aggressive physical assault of [the defendant], from which he had to defend himself." The defendant further argued that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice because other evidence would reveal that the victim and her friends "ha[d] a history of selling drugs."

The trial court granted the State's motion to exclude evidence of the prior drug sale. Concluding that the evidence was irrelevant, the trial court noted that the prior drug sale was "wholly unrelated to [SC and the victim's] involvement with [the defendant]" and that the defendant "was unaware" that it had occurred. The court reasoned that "[i]t would be highly speculative to suggest that, because of prior issues remote in time from current events, [SC and the victim] had reason to be aggressive toward [the defendant]." Relying upon New Hampshire Rule of Evidence 403, the court further concluded that "[t]he danger of unfair prejudice and of misleading the jury is substantial

3

because the connection of the evidence to the case relies on what amounts to little more than pure speculation."

Following his trial, the jury acquitted the defendant on the first and second degree murder indictments, but convicted him of the lesser included offense of reckless manslaughter. This appeal followed.

## II. Analysis

On appeal, the defendant argues that the trial court erred by ruling that evidence of the prior drug activity was irrelevant, and, therefore, inadmissible, pursuant to Rules of Evidence 401 and 402. Specifically, the defendant contends that the evidence "was relevant to show that [the victim] and [SC] had a motive to respond aggressively when they believed that [the defendant] was trying to steal drugs from them," thereby making it more likely that the defendant acted in self-defense when he stabbed the victim. The defendant also argues that the trial court erred by excluding evidence of the prior drug activity pursuant to Rule 403 because, in his view, the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice or of misleading the jury.

For the purposes of this appeal, we assume that the trial court erred by concluding that evidence of the prior drug activity was irrelevant under Rule 401. Nonetheless, we conclude that the trial court properly excluded the evidence pursuant to Rule 403.[2] Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." N.H. R. Ev. 403.

In general, the trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. State v. Milton, 169 N.H. 431, 435 (2016). To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

As an initial matter, the defendant argues that the trial court misconstrued Rule 403 by "fail[ing] to cite any distinct danger of unfair prejudice or of misleading the jury." Thus, the defendant argues that the trial

---

[2] Although the trial court did not explicitly so state, we interpret its order as providing an alternative basis for excluding this evidence under Rule 403, even assuming evidence of the prior drug activity was relevant. See State v. Surrell, 171 N.H. 82, 88 (2018) ("The interpretation of a trial court order presents a question of law for us to decide."). Indeed, the defendant challenges the trial court's Rule 403 analysis on appeal.

4

court's ruling "should not be viewed with deference." We disagree. As stated above, the trial court found that the speculative nature of the evidence posed a distinct danger of unfair prejudice and of misleading the jury. The trial court further concluded that this danger substantially outweighed the probative value of the evidence. Accordingly, we reject the defendant's argument and apply our unsustainable exercise of discretion standard to the trial court's ruling. See id.

Turning to the trial court's Rule 403 ruling, we conclude that the court did not err in determining that the probative value of the evidence was substantially outweighed by the risk of misleading or confusing the jury. On the one hand, the probative value of the prior drug sale and related text messages was minimal. The defendant contends that the evidence was relevant to his self-defense claim because it showed that SC and the victim had a motive to act aggressively toward the defendant — thereby making it more likely that they did, in fact, act aggressively toward him on the night of the homicide. See RSA 627:4, II(a) (2016) ("A person is justified in using deadly force upon another person when he reasonably believes that such other person . . . [i]s about to use unlawful, deadly force against [him]."). Even assuming that the evidence was relevant for that purpose, it was not highly probative as to the central premise of the defendant's self-defense claim: whether he was justified in using deadly force. See State v. Kim, 153 N.H. 322, 330 (2006) (noting that "although evidence may be relevant, it may have minimal probative value"). Nothing about the evidence suggested that the prior drug sale resulted in physical violence or aggression. Although the victim's text messages reveal her frustration with the prior buyer, as well as her desire to seek revenge against him, there was no evidence that SC or the victim acted violently or aggressively after discovering that the prior transaction had been funded with counterfeit money. Thus, even if SC and the victim had a motive to act aggressively toward the defendant on the night of the altercation, the prior drug sale and related text messages offered minimal probative evidence as to whether they were motivated by the prior incident to use deadly force toward the defendant.

Moreover, the evidence of the prior drug sale was cumulative of other, more probative evidence that SC and the victim had a motive to act aggressively toward the defendant. See State v. Reinholz, 169 N.H. 22, 30 (2016) (noting that, when weighing evidence pursuant to Rule 403, we consider, in part, "the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference"). At the time of the trial court's ruling, there was no dispute that the defendant fled from the vehicle with the marijuana before completing the transaction. Nor was there any dispute that SC and the victim followed the defendant into the vestibule and confronted him. It follows from these undisputed facts that SC and the victim believed the defendant was attempting to steal the marijuana and followed him into the vestibule to retrieve it. Thus, when compared to the prior drug sale,

5

which occurred nearly six weeks prior, and which did not involve the defendant, the defendant's actions on the night of the altercation provided SC and the victim a far greater motive to act aggressively in an effort to prevent the theft of their drugs. Indeed, it is unremarkable that a drug dealer would react aggressively when confronted with an attempted theft of his or her contraband in the middle of a drug transaction. In light of this evidence, we conclude that the prior drug sale and related text messages had minimal probative value. See State v. Woodard, 146 N.H. 221, 224-25 (2001) (holding that the probative value of the disputed evidence was reduced by other evidence offered for the same purpose).

The risk of misleading or confusing the jury, on the other hand, was substantial. Although we assume, for the purposes of this appeal, that the evidence was relevant under Rule 401, we accord deference to the trial court's conclusion that "[t]he danger . . . of misleading the jury is substantial because the connection of the evidence to the case relies on what amounts to little more than pure speculation." As the trial court observed, the prior drug sale was both "remote in time" from the events that led to the victim's death and "wholly unrelated to [SC and the victim's] involvement with [the defendant]." The prior drug sale occurred nearly six weeks before the victim met the defendant, and there was no evidence that the defendant was part of, or even knew about, the prior drug sale. Thus, even if the evidence satisfied the low standard for relevancy under Rule 401, the connection between the prior drug sale and the victim's encounter with the defendant was so attenuated that it created a substantial risk of misleading the jury by introducing facts about an entirely unrelated, prior drug sale. See State v. Alexander, 143 N.H. 216, 222 (1998) (upholding the trial court's determination "that the proffered evidence of motive and bias would tend to confuse and mislead the jury, . . . especially given its remoteness and speculative nature"). Contrary to the defendant's contention, neither Part I, Article 15 of the State Constitution, nor the Sixth and Fourteenth Amendments to the Federal Constitution, confer upon defendants the right "to introduce evidence that will have little effect other than to confuse the issues or confound the jury." State v. Mitchell, 166 N.H. 288, 296 (2014). We therefore conclude that the trial court sustainably exercised its discretion when it determined that the risk of misleading the jury substantially outweighed the probative value of the evidence.

The defendant nonetheless argues that our decision in State v. Smalley, 151 N.H. 193 (2004), is "analogous" and compels a contrary conclusion. We disagree. In Smalley, the defendant was convicted of second degree murder after he shot the victim in an effort to protect one of his business associates. Id. at 194-95. On appeal, we held that evidence of the defendant's prior drug-dealing activities satisfied the third prong of the Rule 404(b) analysis, which, like Rule 403, requires the court to consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Id. at 198-201; see N.H. R. Ev. 404(b)(2)(C). We concluded that the evidence at issue

6

in Smalley "was highly probative of [the defendant's] state of mind on the night" he shot the victim, an issue that was "central" to the case. Id. at 199. We reasoned that the evidence was relevant to prove, not only the defendant's relationship with the associate, but also his "motivation, beyond friendship, for going to the motel [where the victim was shot] to protect [the associate] and his business interests." Id. We further concluded that the evidence was not unfairly prejudicial, in part because "evidence of drugs and drug-dealing pervaded the case" and because the evidence "was not so inflammatory as to outweigh its highly probative nature." Id. at 199-200.

The defendant argues that Smalley is analogous because, in his view, "the evidence [in this case] was highly probative to explain the drug dealers' motivation for acting violently during the events in question." We are not persuaded. In Smalley, we determined that evidence of the defendant's motivation was "highly probative" because it "added significant incremental value in addressing the central issue of [the defendant's] state of mind." Id. at 199 (emphasis added). Unlike the evidence that we considered in Smalley, the disputed evidence here related to a prior drug transaction by the victim, not the defendant, who was not a party to, and had no knowledge of, the prior drug sale. As such, the disputed evidence offered little, if any, probative value as to the defendant's state of mind on the night of the homicide. Indeed, during the motion hearing the defendant conceded that the prior drug sale and related text messages were not "relevant to his state of mind during the events in question." Therefore, the defendant's reliance upon Smalley is misplaced.

We next address the defendant's argument that the trial court erred by withholding certain redacted records that the State submitted for in camera review. The redacted records, which related to forensic testing conducted at the New Hampshire State Police Laboratory, were part of a larger set of records that the State disclosed to the defendant prior to trial. They consisted of notes taken by a laboratory employee, as well as emails exchanged between the employee and a prosecutor. The State claimed that the redacted information was confidential work product that was not subject to disclosure. Specifically, the State argued that the employee's notes "contain[ed] strategic decisions made by the prosecutor" and that the emails were "administrative in nature and [did] not contain information that [was] pertinent to the anticipated testimony of any witness." At the defendant's request, the trial court reviewed the records in camera and ordered partial disclosure of the notes. With respect to the remaining records, the court determined that they were "not discoverable" and ordered that they "remain under seal." We review the trial court's decision for an unsustainable exercise of discretion. State v. Guay, 162 N.H. 375, 385 (2011).

On appeal, the defendant argues that the withheld employee notes were not confidential work product and that, even if they were, the court should have disclosed them. Work product is the result of an attorney's activities

7

when those activities have been conducted with a view to pending or anticipated litigation. State v. Zwicker, 151 N.H. 179, 191 (2004). While work product consists generally of the attorney's mental impressions, conclusions, opinions, or legal theories, witness statements that contain purely factual information do not fall within the ambit of the doctrine. Id. Whether information is protected work product depends upon the substantive information that the material contains, rather than the form the information takes or how it was acquired. Id. However, work product "is not beyond pretrial discovery." State v. Chagnon, 139 N.H. 671, 674 (1995). The determination of whether to compel disclosure of work product is a matter for the trial court, which should consider the reasons motivating the protection of the work product together with the desirability of giving the parties an adequate opportunity to properly prepare their cases. Id.

After reviewing the withheld notes, we conclude that the notes were work product. The notes described the prosecutor's mental impressions about the evidence, rather than the laboratory employee's own observations. See Zwicker, 151 N.H. at 191. We further conclude that the trial court did not unsustainably exercise its discretion by declining to compel disclosure of the emails pursuant to the standard set forth in Chagnon.

The defendant next argues that the withheld emails were not protected from disclosure under New Hampshire Rule of Criminal Procedure 12(b)(5). New Hampshire Rule of Criminal Procedure 12(b) requires the State to disclose to defendants "[c]opies of all . . . statements of witnesses." N.H. R. Crim. P. 12(b)(1)(B); see N.H. R. Crim. P. 12(b)(4)(A) (requiring disclosure of "all statements of witnesses the State anticipates calling at the trial or hearing"). The State may, however, redact from witness statements "information concerning the mental impressions, theories, legal conclusions or trial or hearing strategy of counsel" and "information that is not pertinent to the anticipated testimony of the witness on direct or cross examination." N.H. R. Crim. P. 12(b)(5).

After reviewing the withheld emails, we conclude that, even if the emails were "statements of witnesses" under New Hampshire Rule of Criminal Procedure 12(b), they were administrative in nature and consisted of "information that [was] not pertinent to the anticipated testimony of the witness on direct or cross examination." N.H. R. Crim. P. 12(b)(5). Thus, the State was not obligated to produce them.

Finally, the defendant requests that we determine "whether any of the withheld information should have been disclosed because it was material and exculpatory." After reviewing the withheld records, we conclude that none of the withheld information was material or exculpatory. Accordingly, we hold that the trial court did not err by declining to order the disclosure of the withheld records.

### III. Conclusion

For the foregoing reasons, we affirm the defendant's reckless manslaughter conviction.  <u>See</u> RSA 630:2, I(b).  Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived.  <u>State v. Bazinet</u>, 170 N.H. 680, 688 (2018).

<u>Affirmed</u>.


HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.